the appointment in this case under the Criminal Justice Act, and you may proceed. Well, thank you very much, and may it please the Court. Before the Court today is what many cases have called a classic subterfuge traffic stop, where Deputy Miller enters first non-travel-related questions, drug interdiction questions, because he felt it was his role to determine, quote, whether or not individuals may or may not be involved in criminal activity. Rodriguez and others, his progeny, tell us that this is improper. Appellant wishes to highlight the Fourth Amendment violations that occurred throughout the traffic stop, from the inception through the extension. Specifically, the prolongation of the stop was not supported by reasonable suspicion. While Appellant challenges whether the record supports the facts alleged by the government, even if they were accepted, the record would not generate reasonable suspicion, for which this Court reviews de novo. Indeed, if the government's facts are accepted, the case is most similar to United States v. Peralez at 526 Federal Reporter 3rd, 1115. That's from this circuit in 2008. But before we get there, the facts are critical. And at the inception of the traffic stop, Deputy Miller declined to activate his body camera, declined to activate his traffic camera when he initiated the radar stop. Indeed, the capture of the traffic stop would have been preserved had he activated his lights, had he activated the sirens and initiated the traffic stop within 30 to 45 seconds. He declined to do so. His rationale for declining to do so is contradicted by extrinsic and intrinsic impossibilities. Specifically, he identifies Appellant was the only car on the road. Later, he wouldn't pull her over immediately because traffic was heavy. This direct intrinsic contradiction makes the testimony of Deputy Miller incredible. In fact, this Court has held so in the past in Procopec. Counsel, I don't necessarily disagree with you, but we don't make credibility determinations. The district court does. That's true to an extent. You do review for clear error. And here, clear error is appropriate when there's internal inconsistencies or impossibilities or extrinsic contradiction. Now, the government asserts that your review is, or the district court's credibility determination is virtually unassailable, but the qualifying word there is critical, virtually unassailable, not absolute. And in fact, this Court has held in Procopec that an officer is not entitled to that, and a district court is not entitled to hold that credibility determination. Counsel, let's go then beyond the stop to the search. Were there any factual determinations made by the district court related to Officer Miller putting his hand on the car when they started leaving as to whether that had any impact on whether they were free to leave?  So the district court believes he was directing them where to park, but that's not dispositive of this case. As this court well knows, the standard for consent is that consent cannot be presumed from the absence of proof that a person resisted police authority or proof that the person merely acquiesced, and that's from the government's case, Magillan, quoting a 1985 Eighth Circuit case, longstanding determination. What the district court did not credit that perhaps appellant suggests she should have is that there was no written consent, that the appellant and the passenger, Mr. Jimenez, were given the opportunity to decline consent. They were given the opportunity to refuse to sign the form. The form remains unsigned. Indeed, both occupants did decline consent. So whether or not he put his hand on the car or directed them where to park, there is no evidence of consent. While consent is a factual determination for which this court reviews for clear error, the burden is on the government of demonstrating consent. Not just consent occurred, but that the consent was voluntary. And here at the district court, the district court erred by failing to hold the government to that burden. Moreover, at the traffic stop and for what the government determines or the government alleges creates reasonable suspicion, the court found that appellant was searching for the name of the occupant of the vehicle, the passenger, in the rental pamphlet. Indeed, Deputy Miller says that he asked her who rented the vehicle, and she looked down at the rental pamphlet and came up with the name Andres. Well, on page three of our addendum, the first page after the index, is the rental agreement. And on the top of the document, the very second line, it says customer name Giovanni Jimenez. Nowhere is the name Andres. So giving credit to the officer's testimony that she searched and found the name Andres in the rental book pamphlet is improper. It's contradicted by extrinsic evidence, and it's contradicted by the internal inconsistencies of Deputy Miller's statement. Moreover, the court found that there were travel inconsistencies between the testimony from both appellant and her passenger, Mr. Jimenez. While this court has long recognized and routinely recognized that travel inconsistencies does not itself generate reasonable suspicion, it can when coupled with other factors. In many of the cases in which travel inconsistencies has been held to support reasonable suspicion, among other factors, there has been far more factors than this. Indeed, there has been spare tires in the back of the car instead of where the spare tire is typically kept in the spare tire well. There has been sagging vehicles despite the trunk being reportedly empty. There has been nervousness exuded by corroded artery pulsations, by sweating, by shaking, by looking around. There have been far more facts in every other case than in this case. Even crediting the government's alleged facts. Moreover, the court also found, district court also found, that the traffic stop was supported by probable cause to stop for the offense of speeding. But Deputy Miller's testimony is again inconsistent. For one, he says, she's going too slow, then she's going too fast. For two, he declined to activate his sirens, activate his cameras at any time during the traffic stop until the contraband was discovered. Indeed, this has happened before. And I cite the Flora case down in the southern district of Iowa where Deputy Miller did the same thing. Pulled the petitioner over, it's a 1983 case. Pulled the petitioner over without reporting any aspects of the stop. Then continued to intersperse drug interdiction questions as opposed to travel related questions. And indeed, this is a pattern and practice that this court credited Deputy Miller, the district court should not have. And I'll preserve my time for rebuttal unless there's further questions. Thank you. Thank you. All right, Ms. Sudman, you may proceed. Thank you, Your Honor. May it please the court, counsel? Shelly Sudman, representing the United States, Southern District of Iowa. The government is going to kind of start where Ms. Gonzalez-Carmona left off, and that was at the traffic stop. First of all, the entire traffic stop was captured. I believe what counsel was trying to say was that the traffic violation was not captured on the cruiser video, which is true, but the entirety of the traffic stop was captured on the cruiser video. And it's the government's contention that the district court did properly determine that Deputy Miller was credible and that he had probable cause to conduct a traffic stop of the vehicle driven by Ms. Gonzalez-Carmona for speeding. When Deputy Miller approached the vehicle on the passenger side on the interstate on I-80, he said the reason for the stop, and she immediately identified that she saw the speed limit sign ahead and started speeding up, which was consistent with Deputy Miller's testimony that he first ran radar. She was going just under the speed limit. He saw her then speed up and then did another radar check and clocked her at going above the speed limit, and that was the reason for the stop. Counsel, I thought he followed her for quite some distance before initiating the stop. So how does that line up with her being able to see the sign just ahead? So in that portion of, and we're talking, you know, two mile markers, so not a significant amount of time, and Deputy Miller is in the median perpendicular, so he can see what she can see, and she identified that as well as her reason for speeding up. And Deputy Miller testified that in this area of I-80, it's just kind of the end of Council Bluffs, so it's a very highly congested area, and despite the statements about Ms. Deputy Miller's statements not being true, if you look at the cruiser video, you can see guardrails, and he says that traditionally based on his years of experience, he just waits from that five mile marker to get to that seven because it starts to be more rural, there's no guardrails, and then the shoulders are wider, which is safer. As he knows, as well as just the general public, that as soon as the lights and sirens come on, people start to look. The Iowa law requires people to, you know, move over. And so for all those reasons, he said it was a safety issue for him, as well as the drivers just to wait that little bit where it's a safer place to conduct a traffic stop. So the government disagrees. In review of the cruiser video, you can see initially there's not a lot of traffic when Deputy Miller is following Ms. Gonzalez-Carmona, but as soon as the traffic stop is conducted, which is right after some guardrails on the sides of the interstate, there's an abundance amount of traffic occurring throughout the course of the traffic stop. As the court's aware, I mean, it's the interstate, there's a huge influx of traffic, it's about lunchtime, so there's lots of reasons why at some point periods there's no traffic and then other periods there's lots of traffic. So the government would disagree with the assertion that Deputy Miller was inconsistent in his testimony regarding the details of the reason for the traffic stop. Counsel, I'd like to ask another question. Is the filling out of a search consent form part of the mission of issuing a traffic ticket for a traffic violation? No, that was not necessary. So why is that not a violation of Rodriguez in terms of prolonging the stop unreasonably? So he did write, you know, a small portion, so that would have been a minimal amount of time, but at that point the government would argue that the traffic stop was still occurring because during that time frame there was lots of other things going on. That issue was not addressed. Mr. Deputy Miller did not have a chance to explain at the suppression hearing what he was actually doing in the car. Wouldn't it really depend upon whether he already had reasonable suspicion to prolong the stop? Sure, yes. Because otherwise it's a violation of Rodriguez, isn't it? If it extends the stop. There's a lot of things going on during the course of that stop. He's trying to get this license to go through, which was fraudulent. It was not a real license. So he's having to do that and he's doing other things. The government would submit at that point, though, he's already talked to the driver and the passenger. He's ascertained that there are numerous inconsistencies. So even if that was the case, the government would submit that there was enough reasonable suspicion at that point for the officer to fill out that form to ask for consent when he went back because of all of the inconsistencies with the details of the trip. These people, these two individuals, Ms. Gonzalez-Cremona and Mr. Jimenez, have been on a trip. This is day five of a trip across the United States. Yet they are wholly inconsistent on their travel destinations, which is not based on Deputy Miller's training and experience, would not be consistent with the innocent motoring public in that there's a huge difference between traveling to Iowa or Des Moines and traveling to Ohio, also taking into consideration the fact that the rental agreement is already a day overdue and they're not even halfway to their destination. Ms. Gonzalez-Cremona. But is that evidence of a crime? No. It's just one factor that the officer takes into consideration in the totality of circumstances. And that is the key. Totality of the circumstances is just one factor. But then you look at the other factors as the rental agreement is overdue. Ms. Gonzalez-Cremona says she lives in Las Vegas. She has a California identification. She's lived in Las Vegas for two months, yet she doesn't know an address, have an address. She just lives close to a popular hotel on the Strip. Mr. Jimenez lives in New York, has a New York driver's license, yet he rented a vehicle in Las Vegas. So these are all things that Deputy Miller testified to as far as his development of reasonable suspicion to continue the traffic stop, just to determine, just to determine whether or not those circumstances met were confirmed or dispelled. So, and the questions that Deputy Miller asked were routine questions. These weren't questions that were outside the realm of legally permissible general questions that can be asked by officers on a routine traffic stop. And as far as the rental agreement, it does say Mr. Jimenez's name, but as the government and everyone else knew later in the case is that Mr. Jimenez was the passenger, but there were other people involved. So, yes, she could have been looking at that rental agreement to see, is it Mr. Jimenez that rented this vehicle or was it Marta Gomez or someone else that's involved in this conspiracy? So by her looking at that, that's not necessarily inconsistent with what Deputy Miller testified to. As far as the consent issue that the court previously asked about, that issue is based on a totality of the circumstances. And in review of the totality of the circumstances, Ms. Gomez-Gonzalez Carmona, she's 38 years old. She's bilingual. She's well educated. She went to high school. She's got two college degrees from Columbia. She was sober. She had a valid passport for numerous years. She was in Canada for a long period of time. She was in England for a period of time. She had fake documents at the time of this stop. She had a fake passport. She had a fake driver's license. So although she doesn't have a criminal history, she is engaging in criminal behavior. She entered the United States from Canada legally. She — and then the — I'm not following how that goes to consent. Well, because you look at the totality of the circumstances, and those are the personal characteristics of Ms. — Okay. So she was smart enough not to sign the consent form. Or smart enough to think that she would get away with it. And the other factors would just be the — it was a cordial environment, non-threatening, one officer, other cars coming by. And when you look at that video, which the government would suggest is very telling, is that you can't hear what's happening, but he says, okay, I can search. And then she says, okay, step out. He says, okay, step out. I'm going to go get gloves. Now, as the court — I'm out of time. Thank you. Yes. Your time has expired. Thank you for your argument. All right, we'll hear from you in rebuttal, Mr. LaBrie. Thank you very much. Just a couple quick points. That the search to consent form was filled out in advance does demonstrate that the traffic stop was intended. Whether it's minimal or not, that is not the determination. Rodriguez puts to bed that determination. The minimus extension of a traffic stop is still a problem under the Fourth Amendment. And, in fact, the government even admits today that filling out the consent to search form is not the mission of the traffic stop. It is not to search for general criminal wrongdoing. It is to effectuate a traffic safety program for which the traffic stop was initiated. Now, the government also said, Deputy Miller, engage in routine questioning. Appellant submits that asking if there are drug offs in the car is not routine questioning. This was, from the inception, a subterfuge traffic stop with greater sights than a five-mile-per-hour speeding violation. Counsel, what about the masking agent, the tremendous odor that was noticed upon pulling them over? Doesn't that bear into whether they could prolong the stop? The odor that the officer identified was candles. As the courts have found in the past, conduct that is generally occurring from reasonable people, law-abiding citizens, does not necessarily generate reasonable suspicion. And a rental car, which are cleaned and freshened more regularly, is one of those circumstances. So it shouldn't bear on reasonable suspicion in the end. Two more quick points. Travel inconsistencies alone are not enough. That's Briasco. Briasco says that. And that the traffic stop was still occurring is not the issue. The issue is whether the traffic stop was extended unreasonably. Appellant submits it was so. Thank you. Thank you to both counsel. Case is submitted. Court will file a decision in due course. Counselor excused.